on behalf of defendant appellant Jacob Drummondo-Farias and if I could I'd like to reserve a couple of minutes for rebuttal. Alright, watch your clock. I will, thank you. You know, this appeal is an appeal from, as you know, a conviction and sentence of 25 years. And we're here today on appeal of two issues, really, that we presented in our briefs. The first dealing with Officer Thayne Costa and a prior act of untruthfulness that we believe should have been admitted under 608A. And the second dealing with what we believe to have been an improper jointer of counts 1 and 2 in the second trial. I'll start first with the issue dealing with Officer Thayne Costa and I just want to highlight a couple of things. As the court is aware, Rule 608A, Federal Rule of Evidence 608A, doesn't set a deadline or timeline as does Rule 609. Rule 609 has a 10-year deadline in order for something to be allowed. 608A doesn't, I'm sorry, 608B doesn't do that. And the reason I would submit is because when you're dealing with a character for untruthfulness, simply looking solely at a set time doesn't make sense in determining whether or not something is probative. Can you tell us what possible prejudice there could have been here? What possible prejudice? I suppose it was wrong. What prejudice? Okay. Our position is that Officer Thayne Costa was one of the government's main witnesses here. And that his credibility was very important to this case. There were other witnesses to everything he testified to. I would disagree with that, respectfully, and I'll say one thing. Keep in mind that the first time this case went to trial, only on count one, it resulted in a hung jury. And so the government's position that somehow the evidence was overwhelming is not supported by the fact that in the first trial, before they added the second count, there was a hung jury. Overwhelming. This is a non-constitutional rule. So it just has to be more likely than not that the jury would have found the same thing. Right. But as to – I bring that up because the government's position is that, well, it doesn't matter whether they believe Thayne Costa or not because the evidence is overwhelming. The evidence didn't have to be overwhelming. It just had to be more likely than not that the jury would have found the same thing, no matter what they thought of this officer. But I raise that issue because we believe and we submit that the credibility of Thayne Costa was important in this case, and it wasn't a slam dunk, so to speak, or whatever words we want to use. He had been a slam dunk, but why was he important? He was important for several reasons. He was the first officer to intercept the package. He was the first to open it. He did the testing on the drugs. He was involved in coordinating the controlled delivery. Most importantly, during the controlled delivery, his surveillance of what happened was critical. He testified, and this is where I disagree that there was other witnesses that supported everything that was said by Thayne Costa. He testified that he saw the defendant, in this case, doing counter surveillance and taking suspicious actions as the parcel was being delivered, driving back and forth up and down the street. If the jury believed that and found Officer Costa to be credible, that was extremely damaging to the defense that Mr. Germando Farias had no knowledge or involvement in the transaction that was going on at that time. And so his credibility was an important issue. I want to point out, I would ask the court to look at the conduct of Officer Costa that's at issue. There's cases that the district court judge relied heavily on the fact that this case, I mean, the instance of untruthfulness was old. There's cases from, we cited the Deary case from the First Circuit that talked about 10 year, 10 years prior where an officer lied about something on an overtime report that he submitted to get overtime. I would submit to you that under 608B, you need to look at the conduct at issue to determine whether or not it's probative as to the character for untruthfulness. Officer Costa, in this case, and granted it was a long time ago, as a law enforcement officer lied in an internal investigation about the use of deadly force by a fellow officer. Are you going to address the severance question? Yes. Actually, before we get there, there was another grounds for admitting the evidence, or for excluding the evidence, which was Rule 403. Correct. So let's assume that you're right on 608B, that the court was wrong to look so much at the timing of it. But under 403, the district court has wide discretion to make that balancing test. And I don't want that to be overlooked here. Can you address why the district court would have erred under 403 to exclude the evidence? Under 403, when you look at the prejudice side of that, it says it's unfair prejudice. It has to be unfair prejudice. This is something that Officer Costa did in his capacity as a law enforcement officer. He was found to be untruthful in an official investigation. It's not unfair to the government that we be allowed to bring that in. And if there's prejudice that results, that's not unfair prejudice. But why can't the district court say, look, that's going to create a mini-trial here. We're going to have to have a separate trial evaluating what happened back in 1996 with Officer Costa and the shooting and what he saw and what he didn't see. That might take longer, frankly, than this trial would. Why can't we affirm on that ground? Well, when you look at the district court's ruling, I don't think it was really in dispute what happened in that incident. I mean, the district court ruled that he was untruthful in this prior. Did he say that or did he say it just wasn't probative? He said he just found it to be not probative. So he didn't do a 403 ruling? He didn't balance anything. He did do a 403 analysis, and he found the risk of unfair prejudice to be greater than the probative value. And in doing so, he said, because of its age, he really found it to have very little probative value. And so that's what I would say about that. Just quickly as to the severance issue, I mean, I'm sorry, the misjoinder issue, we rely heavily on the Gerara case and how it talks about simply having two counts that have a common theme is not enough. And you have to rely on what's on the face of the indictment. And in this case, as the court is aware, after the hung jury in the first case, they then superseded and brought a second count involving conduct that happened more than a year before the original count. And the only commonality was that it involved methamphetamine. From the face of the indictment, the amounts were extremely different. The time period was over a year apart, and it didn't involve the same individuals. And so our position is that the cases like Gerara make it clear that simply having that commonality and theme is not enough to join two cases. And when they do a bare-bones indictment, they do it at their peril. And there's not enough in the indictment on the face of it to say that these two cases should have been joined. Meaning that they could have alleged it was part of the same conspiracy, but they didn't? In other words, if they had alleged it, is that what you mean by the bare-bones indictment? Yes. Well, I would submit they didn't expand on it because expanding on it would have made it even more clear it shouldn't have been joined. But a bare-bones indictment in the sense of not putting in more details about the two counts and why they are part of similar or same conduct. And so by not doing that, that's at their peril. And again, I discussed in our brief the prejudice from that. And unless the Court has any additional questions, I'll reserve the rest of my time for rebuttal. Thank you. Good morning, Your Honors. Mark N. Seong, Assistant United States Attorney for the United States in this case. I'll start with the issue in regard to Officer Costa. As the Court indicated in making its finding, and he did do a 403 balancing test, as was stated, the bottom line was the incident was just too old. It happened in 1996. The Court's ruling at the ER at pages 8 through 10 basically was concluded by saying, Given the remoteness, this is substantially outweighed by the risk of unfair prejudice. And as time passes, clearly there's an ongoing diminution in probative value and simply too much time has passed here. So the Court, as has been indicated, has wide latitude, wide discretion in making those decisions. Clearly there was no abuse of discretion in the Court making that sound decision based on the timeframe of this case. In regard to Officer Costa, his role, he was the case agent in this case. Clearly he was well aware of the overall facts and so forth, but to say that he was the main witness in this case would not be accurate. There were nine other witnesses that were called in this case. Each of them corroborated the testimony that Officer Costa gave. He never testified to anything singularly that wasn't testified by another officer or another witness in this case. Let me go back. I'm confusing this with the Hernandez case. There were about 25 witnesses that testified in this case. And one point I want to address is to equate the first trial with this trial is totally inaccurate. They were completely different. Well, how were they completely different? So in the first trial, you didn't have the second count of the indictment. Correct, but there were other important differences as well. Right, but I don't understand. Okay, we're talking about a similar prong. It is similar, but it was a 2010 transaction you were indicting there, whereas the first count was something beginning on a date unknown and up to 2012. But you don't allege anything about them being related at all or one being the overt act of another. And I just have a hard time understanding why we just ruined those counts here when you could have thrown it in at the beginning. Well, the reason why it wasn't part of the conspiracy is we didn't have enough evidence to show that it was actually part of that conspiracy. It wasn't so. So therefore, it's not a common scheme. Can you tell us of any case in which unrelated crimes this far apart in time were joined? Well, the district court cited two, and that was the Brousseau case and the Melendez case. Cases in which they were more than 18 months apart? Yes, the Melendez case was two years apart. And these were court of appeals cases? Correct. The Melendez case is at ER 19. That was a First Circuit case that the district court cited in its pretrial ruling. And they were not part of the same conspiracy or anything? They were just completely separate? Correct. They were two separate drug counts. And that is why the court cited them, because he found them so similar to the actual facts that we had before. Melendez, is that what you're saying? Pardon? Melendez or Menelendez? Melendez. The First Circuit? Correct, First Circuit. Getting back to the earlier question, Your Honor, I'm happy to answer your question about the count two. I'm going to have to go outside the record, I believe, in order to answer that adequately, if Your Honor will permit. Basically, after the first trial ended in a mistrial, we went back. Obviously, we're trying to improve our case in any way we could. But going back and looking through DEA files, they found this one by that had been made from a task force group from Mr. Drumondo that we were not aware of at the time of the first trial. Who was not aware of it? The prosecutors? Correct. Well, I don't understand if it was worth prosecuting. Why didn't the DEA bring it to you in the first place? Because our standard policy is we will not accept one by cases. There are exceptions to that, but normally we expect one by cases, meaning there have to be multiple bys to avoid issues of entrapment, to ensure credibility of the CI if there is one, all those sorts of issues. Because there had never been more than one by, they never brought it to our office for consideration. So that's how it came about. But in regard to the other differences that are important in this case, obviously the second defendant or the new defendant, Mr. Liu, was added. That added a whole new context to the case and a whole slew of evidence that resulted because of his involvement. Airline records that were added, phone records, Julio Camacho who testified, who did not testify the first time. There were the Western Union records that were obtained through the Foodland grocery store wire transfers. Those employees and the custodian of records testified. Are those all related to count one or count two? Those are all related to count one. And so how come the government didn't introduce those in the first place? Again, Your Honor, they probably should have been. When we went back after the hung jury, we were looking to improve the case any way we could, and so those were all aspects that we could. Something that was quite unrelated. I mean, it was a long time before. Well, it was 13 months. It's an unusual thing to do, at least. I mean, sorry, but to be clear, I've been here 18 months. It was 13 months between the two incidents, correct? The end of the conspiracy and count two. Correct. But I'm not – all these instances I'm citing were only with regard to count one. Nothing to do with count two. But to be clear, I know during argument today there's been discussion of a long time period. It was 13 months, correct? Correct. Correct. 13 months. I mean, almost in the same calendar year. Correct. It was December and then January of – The district court found that it was 11 months. That was a misstatement. I noticed that it was – yeah, he was off by a couple months. But that was why he raised the Melendez case, because that was two years, just shy of two years. So we were well within that timeframe on the temporal proximity here, which is, of course, just one of the areas that we believe that counts one or two or the same or similar character. The statutory elements, even though one was a conspiracy, obviously the object of the conspiracy was distribution, so those are very similar. The evidentiary overlap, which was discussed earlier, the judge made a finding, even though it was related later to the prejudice issue, he found that he would have admitted count two as 4-3 – so either of them would have come in. Modus operandi was also similar. I mean, this is distribution of mandatory minimum, 10-year mandatory minimum amounts of methamphetamine. So we believe that they were of the same or similar character, just as we do that they were of a common scheme or plan. The Jawara case, I mean, couldn't be different. I mean, we're talking about that case, an asylum document fraud case, and then a marriage fraud case. I mean, clearly those are not similar and give no precedent for this court based on the facts that we have before us today. As indicated earlier, even if the misjoinder was inappropriate, and I would remind the court, the Armstrong case is the joinder, is the rule, not the exception, there cannot be any prejudice shown from these facts. The overwhelming evidence of guilt, even though, as Your Honor pointed out, it need just be basically a preponderance of the evidence. There was overwhelming evidence of guilt. We have the cooperating witnesses, Miller and Jones, who were corroborated in multiple ways by the other officers' observations by the seized $21,000 in cash that Mr. Miller had alerted the agents to, the wire transfer records from Western Union that were introduced, the express mail labels that showed this pattern that was consistent with the description of the conspiracy that the cooperators had given. Julio Camacho testified at the second trial and corroborated the witnesses, as I said. The airline records corroborated Mr. Miller's description of how Mr. Liu would travel back and forth to transport money and or drugs. We have the defendant's own friends who testified that they had basically charged airline tickets for Mr. Liu. on their credit cards, and the defendant paid him back in one instance. The phone records, which showed the activity, including, which I thought was interesting, the pay phones being used. So all this evidence, I still don't understand why you had to throw in count two of which he was acquitted anyway. Well, Your Honor, if in hindsight I would have known I was going to lose the 404-B that I had previously by adding the second count, then I certainly would not have done so. But that's hindsight. What is the 404-B? I'm sorry. I didn't understand the 404-B reference. In the first trial, we were allowed to introduce the defendant's prior felony drug conviction under 404-B. The second trial, after we added count two, the district court reversed his ruling and said we could not introduce that. Okay. So back to causes just for one second. Is there any evidence in the record that he had ever been deemed to have committed misconduct along the lines of being untruthful in his role as a law enforcement officer subsequent to this event? No. No, and the district court did make reference to that at one point. Okay. You're over your time. Thank you very much, Counsel. Thank you. You know, I would submit that the very reason these rules against improper joinder exist is to prevent exactly what the government tried to do in this situation. They had a case, they went to trial once, they couldn't get a conviction, and afterwards they supersede and they bring up an incident that is 13 months prior to the case they're actually prosecuting that they could have prosecuted in the first instance but chose not to, and they join it in even though it has nothing to do with the other count, and they did that to prejudice the jury against Mr. Germando Farias. Of course, he was acquitted of that case, which makes you think that maybe he wasn't so prejudiced. He was acquitted of count two, but I would submit that that doesn't mean it wasn't harmful. You have a situation where, as I indicated, one specific instance is they used a witness in count one, Mr. Brandon Jones, to listen to a recording in count two and say, yeah, in that recording in count two, even though Mr. Jones had nothing to do with count two, I recognize Mr. Germando Farias' voice. So they used a witness from count one to validate a recording in count two and identify his voice, and we believe that was prejudicial because it only further demonstrated Mr. Jones' relationship with Mr. Farias and that he knew his voice well, and that's not something that they should have been allowed to do. That, coupled with, as we indicated, the first case without count two ended in a hung jury, and the second case with count two ended in a guilty verdict on count one, we believe to be problematic. Jurors, they're not robots in the sense that, who knows, there could have been a compromise, well, let's acquit them of one and convict them of the other, and it's not so simple to say, well, they clearly, just the accusation, maybe they didn't believe there was proof beyond a reasonable doubt, but maybe they believed something was there and that affected how they viewed count one. And so there was prejudice, and I believe I'm over my time. So, thank you. Thank you, counsel.
judges: Wardlaw, Berzon, Owens